UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BLACKBOOK CAPITAL, INC.
FRANKLIN OGELE

       Plaintiffs

          v

THE FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.
AND JOHN DOES 1 -10
      Defendants

CASE No.

PETITION FOR REVIEW OF FINRA'S ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT **AND** COMPLAINT FOR LIBEL/DEFAMATION AND NEGLIGENCE JURY TRIAL DEMANDED

Plaintiff, BlackBook Capital Inc. ("BlackBook") represented herein by Franklin Ogele, Esq., and Plaintiff, Franklin Ogele, ("Ogele") appearing pro se, each a Plaintiff, but collectively, Plaintiffs, brings this Petition against The Financial Industry Regulatory Authority, Inc. ("FINRA") for review of FINRA actions under the Administrative Procedures Act for Biased, Arbitrary and Capricious Actions; for Unfair and Discriminatory Regulatory Enforcement Scheme and for Libel/Defamation and Negligence and allege as follows:

## **BACKGROUND OF THE COMPLAINT**

This case stems from the arbitrary and capricious actions of FINRA, including the publication of falsehood by FINRA in regard to the expulsion of BlackBook from FINRA which publication has damaged, tarnished and continues to damage and tarnish the reputation of BlackBook and Ogele.

Put simply, FINRA falsely and maliciously published on FINRA Central Registration Depositary ("FINRA/CRD") that BlackBook was expelled from FINRA for failing to pay a fine of Fifty Thousand Dollars ($50,000.00).

The publication is pure and blatant falsehood.

The outstanding amount of the fine at the time BlackBook withdrew from FINRA Membership was Seven Thousand, Five Hundred and Ninety Nine Dollars and Eighty Five Cents ($7,599.85); not the $50,0000 falsehood published by FINRA.

There is a world of difference between being a deadbeat for $50,000.00 and $7,599.85. This singular falsehood by FINRA has damaged business opportunities for Ogele as search of Franklin Ogele on the internet inevitably pulls up BlackBook as a $50,000.00 deadbeat.

During on or about August and October 2019, Ogele sought financing on a Phase 1, $60,000,000 real estate development project in Myrtle Beach, SC[1] and for a $100,000,000 hotel and condominiums development in St Thomas, United States Virgin Islands.

The funding sources conducted a search of Ogele on the internet and withdrew from the transaction after the search disclosed that Ogele was associated with BlackBook expelled by FINRA for failure to pay $50,000.00 in fine. This blatantly false publication is malicious, derogatory and has harmed and continues to harm Ogele's reputation in the business community.

For the record, Ogele had advised FINRA in writing in or about June 2019 that the amount owed by BlackBook at the time BlackBook withdrew its membership of FINRA was $7,599.85, not $50,000.00. The facts will show that BlackBook had voluntarily withdrawn its SEC broker-dealer registration and effectively, its FINRA membership, before FINRA "expelled" BlackBook for failing to pay $50,000.00 in fine.

Put simply, FINRA could not have "expelled" a member who had already voluntarily withdrawn[2] its FINRA membership by filing Form Broker Dealer Withdrawal ("Form BDW") with the United

_____

[1] *The total projected capital outlay for the 26 buildings, 520 Units, Summit Shores, Myrtle Beach, SC development is $134,641,970.*

States Securities and Exchange Commission (the "SEC"). Moreover, FINRA falsely claim that it "expelled" BlackBook for failing to pay $50,000.00 in fine when the amount owed at the time of the so-called "expulsion" was only $7,599.85. *See Exhibit 1.*

The publication is false, malicious, arbitrary and capricious, and designed to bring and has had the effect of bringing Ogele to public disrepute and opprobrium. The falsehood alleged herein is twofold: (i) falsely claiming to "expel" a member that had already withdrawn its membership and (ii) falsely claiming that the member failed to pay $50,000.00 instead of $7,599.85 which was the amount owed at time of the arbitrary expulsion.

## **FACTS**

BlackBook was a broker-dealer registered with the SEC pursuant to the Securities Exchange Act of 1934 and a member of FINRA. In 2014 FINRA conducted a routine examination of BlackBook and identified certain infractions of FINRA rules. To avoid the expense of litigating the alleged infractions and without admitting to the alleged infractions, BlackBook and FINRA agreed to settle the alleged infractions for a fine of $50,000.00. *See Exhibit 3.*

As part of the settlement, BlackBook agreed to make an initial payment of 25% of the $50,000.00 fine and a monthly payment of $1,700.00. BlackBook made the initial 25% down payment and diligently paid the monthly $1,700.00 through on or about December 2016 when it could no longer afford the payments because over the years BlackBook was subjected to incessant, unfairly burdensome examinations and extraordinary financial reporting obligation stemming from FINRA's New York City's notorious bias against small firms[3] and in favor of big investment banking firms where FINRA staff usually land enormously lucrative positions after their short gigs at FINRA.

---

[2] *According to FINRA's own Central Registration Depositary ("CRD") BlackBook terminated or withdrew [its] registration on June 21, 2016; however, on June 28, 2016 or seven (7) days later, FINRA expelled the firm. See Exbibit 2.*

[3] *Article 1(jj) of FINRA's By Laws – defines a small firm as "any broker or dealer admitted to membership in the Corporation which, at the time of determination, has at least one and no more than 150 registered persons*

The reason for the bias is obvious: FINRA staff would rather land enormously lucrative jobs at large investment banking firms after short gigs at FINRA. Therefore, they are less likely to make trouble with a big firm where you are likely to land a job after FINRA.

The Court should take notice that rule infractions by small FINRA member firms pose less overall risk to the economy than violations by large firms. A good example is the recent near economic collapse caused by the mortgage meltdown. While the big firms and FINRA member firms were implicated in the economic hari-kari that almost destroyed the global economy, there is little evidence that small FINRA member firms were involved. Yet the small firms are more likely to be driven out of business due to FINRA bias.

Another notable example of FINRA's bias in favor of the powerful is the case of Mr. Barney Madoff ("Madoff"), the convicted Ponzi scheme fraudster who is now serving 150 years in federal penitentiary for scamming investors a staggering $65,000,000,000.[4]

For almost 30 years, Mr. Madoff ran the most wide-ranging Ponzi scheme in the annals of financial scams, defrauding investors to the tune of $65,000,000,000, using, upon information and belief, Madoff Investment Securities LLC, ("Madoff Investment") a FINRA member firm to execute trades for his victims. Yet, for almost all those 30 years, there was not a single enforcement action brought by FINRA against Madoff that drew the type of severe penalty of $50,000.00 fine as was imposed on BlackBook for minor infractions. *See Exhibit 3.*

Remarkably, FINRA and its predecessor, the NASD, took no meaningful action against Madoff Investment during the crime spree because Mr. Madoff, the owner, was at various times, the powerful Chairman of NASDAQ, Inc., the automated quote system operated by the NASD[5] as

---

[4]*https://www.nytimes.com/2009/06/30/business/30madoff.html?mtrref=www.google.com&gwh=EE9534DCC3FC5A1E85BF3BCFDF28ABB9&gwt=pay&assetType=REGIWALL*

[5] *https://en.wikipedia.org/wiki/Bernie_Madoff*

well as Chairman of Governing Board of the NASD[6] It was not until 2008 that the SEC filed charges against Madoff and Madoff Investment[7] which led to Mr. Madoff's conviction and imprisonment. *See Exhibit 4.*

It is also remarkable that Madoff Investment, the FINRA member firm used, upon information and belief, by Mr. Madoff to mastermind a $65,000,000,000 heist, right under FINRA's nose, was never "expelled" by FINRA but was allowed to "liquidate"; but BlackBook which had minor infractions [with absolutely no customer complaint stemming from the alleged infractions],and was fined $50,000.00; struggled and paid $42,400.15 out of the $50,000 fine until it withdrew from FINRA membership, was still punished with "expulsion" for failing to pay $50,000.00 and libeled along the way in terms of the amount owed at the time of the "expulsion".

Indeed a search of Madoff Investment, a firm notoriously synonymous with the largest financial heist of the century, on FINRA/CRD only disclose that *"[This] firm is no longer in business (due to liquidation)"* and *"Not currently registered as a broker,"* but BlackBook with no record of anything near the financial mayhem caused by Madoff was "expelled".

Clearly, Madoff Investment's *"....no longer in business"* and *"not currently registered as a broker"* disclosed on FINRA/CRD does not evoke the opprobrious stench of wrongdoing that BlackBook's "expulsion" evokes which disclosure has damaged Ogele's reputation as a result of Ogele's association with BlackBook. *See Exhibit 5.*

The fact remains that apart from minor fines on Madoff Investments during its 30 years run, there was not a single regulatory enforcement action by FINRA against Madoff Investments that came

---

[6] *https://money.cnn.com/2008/12/11/markets/madoff_fraud/*

[7] *The Court should take judicial notice that Madoff Investment Securities LLC, the FINRA member firm, was prominently featured in the Madoff criminal complaint per Exhibit 4.*

close to SEC Rule 10b-5 violation, the charge that ultimately brought down Madoff and Madoff Investments 30 years criminal enterprise.[8] *See Exhibit 6.*

In the course of this litigation, Plaintiffs intend to fully develop through discovery the factual basis of FINRA's historical regulatory bias in favor of big firms and powerful individuals. Plaintiff expect the discovery to include SEC's FINRA and Securities Industry Oversight ("FSIO") reports on SEC's overall supervision of FINRA, including reports on FINRA's New York City District Office, in particular, and FINRA's biased and discriminatory enforcement of SEC Rule 17a-5, which illegal imposition on BlackBook ultimately led to the demise of BlackBook. Plaintiffs reserves the right to amend this Complaint as additional facts are developed in discovery.

## PARTIES

Plaintiff, BlackBook Capital Inc. is a Delaware corporation whose current address is 17 Roosevelt Drive, Hillside, New Jersey.

Plaintiff, Franklin Ogele, is a natural person whose address is 17 Roosevelt Drive, Hillside, New Jersey and owner of more than 75% of BlackBook.

Defendant, The Financial Industry Regulatory Authority, Inc. is a Delaware corporation with offices located in major United States cities, including an office at 581 Main Street, Suite 710, Woodbridge, New Jersey.

Defendant John Does 1 through 10 are FINRA's personnel, currently unknown, but whose identity will be discovered in the course of this litigation who were responsible for the supervision of FINRA Staff that engaged in the illegal conduct alleged in this action, including the entering of the false publication on FINRA/CRD of expelling BlackBook for failure to pay $50,000.00 in fines.

---

[8] *http://www.brokeandbroker.com/98/madoff-finra/*

## JURISDICTION

The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332 which provides that federal district courts have jurisdiction over all civil actions where the matter in controversy exceeds $75,000.00 and the parties are diverse.

The Court also has original jurisdiction under 28 U.S.C § 1331 because the case involves the federal question of the Administrative Procedures Act. (the "APA") and SEC Rule 17a-5.

## VENUE

Venue is proper in this judicial district under 28 U.S.C § 1391 because FINRA has an office at 581 Main Street, Woodbridge, New Jersey and as such subject to this Court's jurisdiction.

## CAUSES OF ACTION

### _As for the First Cause of Action – Petition for De Novo Review of FINRA Action._

Plaintiffs reiterate the allegations above as if repeated verbatim herein and allege as follows:

FINRA derives its self-regulatory authority from the Mahoney Act of 1938 which allows self-regulatory organizations to assist the SEC in the regulation of the securities markets.

The United States Congress granted the SEC the authority to supervise FINRA pursuant to Section 19 of the Securities Exchange Act of 1934.

The action of a self-regulatory organization whose authority derives from an organic federal law, implicates constitutional federal question, including Section 706(2)(A) of the APA and as such, subject to federal court jurisdiction.

Section 702 of the APA – Right of review provides as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

7

action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party….."

Plaintiff, BlackBook has since withdrawn and terminated its SEC broker-dealer registration and as such cannot avail itself to SEC's review of FINRA's regulatory action over BlackBook by way of exhausting the administrative remedies under the regulatory scheme.

This federal court is therefore the appropriate venue for the instant application for review of FINRA's regulatory actions, including the ancillary common law causes of action alleged in this complaint.

Section 706(2)(F) of the APA mandates federal courts to review a regulatory action which is "*unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court*"

The expulsion of BlackBook for failure to pay $50,000.00 in fines is *unwarranted by the facts* and therefore properly situated for de novo review by this Court.

Indeed, the amount owed to FINRA was only $7,599.85.[9]

The "expulsion" of BlackBook by FINRA after BlackBook was no longer a FINRA member by virtue of having filed a Form BDW *prior* to the FINRA's regulatory "expulsion" action is unwarranted by the facts and therefore properly situated for de novo review by this Court.[10]

FINRA Rule 8320(b) – Summary Suspension or Expulsion – allows FINRA to summarily suspend or expel a member.

---

[9] *See Exhibit 1 supra.*

[10] *See Exhibit 2 supra.*

A summary action is subject to de novo review as a matter of law.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

> (a) awarding to Plaintiffs actual damages in an amount to be determined at trial;
>
> (b) awarding to Plaintiffs punitive damages in an amount to be determined at trial;
>
> (c) awarding to Plaintiff, BlackBook attorneys' fees;
>
> (d) awarding to Plaintiffs the costs and expenses of this action; and

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

## As of the Second Cause of Action – Violation of Section 706(2)(A) of the Administrative Procedures Act for Engaging in Arbitrary and Capricious Conduct.

Plaintiffs reiterate the allegations above as if repeated verbatim herein and allege as follows:

FINRA derives its self-regulatory authority from the Mahoney Act of 1938 which allows self-regulatory organizations to assist the SEC in the regulation of the securities markets.

The United States Congress granted the SEC the authority to supervise FINRA pursuant to Section 19 of the Securities Exchange Act of 1934 or15 U.S. Code § 78s.

The action of a self-regulatory organization whose authority derives from an organic federal law, implicates constitutional federal question, including Section 706(2)(A) of the APA and as such subject to federal court jurisdiction.

Plaintiff, BlackBook has since withdrawn and terminated its SEC broker-dealer registration and as such cannot avail itself to SEC's review of FINRA's regulatory action over BlackBook by way of exhausting the administrative remedies under the regulatory scheme.

This federal court is therefore the appropriate venue for the instant application for review of

FINRA's regulatory actions, including the ancillary common law causes of action alleged in this complaint.

Section 706(2)(A) of the APA provides as following:

*"Scope of review. - To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall -*

*(2) hold unlawful and set aside agency action, findings, and conclusions found to be -*

*(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;*

.

*(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;*

.

*(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court"*

The (i) "expulsion" of a member who had already withdrawn its membership of FINRA prior to FINRA expulsion action for (ii) failure to pay $50,000.00 in fines, instead of the $7,599.85 owed, is an *arbitrary, capricious, action; an abuse of discretion or otherwise not in accordance with law.*

Such action violates Section 706(2)(A) of the APA.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

        a)  awarding to Plaintiffs actual damages in an amount to be determined at trial;

        b)  awarding to Plaintiffs punitive damages in an amount to be determined at trial;

        c)  awarding to Plaintiff, BlackBook attorneys' fees;

d)  awarding to Plaintiffs the costs and expenses of this action; and

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

### *As of the Third Cause of Action – Biased and Unfair Discriminatory Regulatory Enforcement Scheme, including Enforcement of SEC Rule 17a-5.*

At all times relevant to this litigation, Plaintiff, BlackBook was subjected to various examinations, including routine, branch and cause examinations, including illegal imposition of monthly FOCUS[11] Reporting.

SEC Rule 17a-5(a)(2)(iii) requires broker-dealers who clear and carry customer accounts to file monthly FOCUS Reports.

Plaintiff, BlackBook never cleared nor carried customer accounts.

However, and contrary to the law, Plaintiff, BlackBook was subjected to the biased and discriminatory, unwarranted, unjustified and extraordinary monthly financial reporting obligations even though BlackBook never held nor cleared customer accounts and had no prior history of Net Capital Rule [17 CFR § 240.15c3-1] violation at the time FINRA imposed the unwarranted, unjustified and extraordinary monthly financial reporting obligation on BlackBook.

Upon information and belief, FINRA did not impose did not impose the requirement for monthly FOCUS Reporting on similarly situated member firms.[12]

---

[11] *FOCUS Report is the **Financial and** Operational Combined Uniform Single format for providing broker-dealer financial statements.*

[12] *Indeed, the New York City District Office of the NASD, now FINRA, which had oversight over BlackBook, had a history of race based employment and sexual orientation discrimination. There was the case of David Kenny, an NASD Supervisor, in the New York City District Office, and a known homophobe, who at dispatching examiners to conduct audit of Christopher Street Financial, a member firm, located in New York City's Greenwich Village, would make disparaging*

Plaintiff, Ogele only became aware that FINRA did not impose did not impose the requirement for monthly FOCUS Reporting on similarly situated member firms, a biased and discriminatory practice that ultimately led to the demise of BlackBook, in or about April 2019.

The imposition of unwarranted, unjustified and extraordinary monthly financial reporting obligation on BlackBook which neither cleared customer trades nor carried customer accounts was in violation of SEC Rule 17a-5(a)(2)iii) [not FINRA rule] and therefore contrary to the law.

Upon information and belief, FINRA knew that the unwarranted, unjustified and extraordinary monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable explanations of the entries with the FINRA Staff, would have BlackBook, a small member firm with limited resources, hobbled with financial reporting obligations to the neglect and detriment of other regulatory obligations required of a broker-dealer.

Upon information and belief, FINRA knew that the unwarranted, unjustified and extraordinary monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable explanations of the entries with the FINRA Staff, was biased and discriminatory,

---

*and homophobic remarks about the Principal of Christopher Street Financial, whom he would refer to as "already dying of AIDS." Indeed, Plaintiff, Ogele, who had worked for FINRA New York City District Office for six (6) years, while attending law school at night and had passed the New York and New Jersey bar exams at first attempt, could not even get a job with FINRA's Legal Department when he applied but was turned down in favor of a white person who had absolutely no experience in member firm regulation and who, upon information and belief, was not even admitted to practice law in the State of New York. And to add salt to injury, as it were, Mr. Gary Leibowitz, the then Regional Counsel for New York City's FINRA District Office, upon learning that Plaintiff, Ogele had passed the bar exams at his first attempt snidely, and with such racially insensitive and condescending air said to Plaintiff, Ogele, "we were not expecting you to pass the bar" as if Ogele, a black man, does not have the intellectual capacity or "necessities" [apologies to "Jimmy The Greek"] for passing a bar exam at first attempt.*

unfairly burdensome and acted as an *inbuilt headwind* against BlackBook, a small FINRA member firm with limited resources, making it impossible for BlackBook to survive.

Upon information and belief, the biased and discriminatory regulatory scheme had the predictable outcome because as BlackBook was distracted and hobbled with preparing and filing unwarranted monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable requests for explanations of the underlying entries from FINRA Staff, BlackBook which diligently monitored the number of stockbrokers on its roster who had previously worked at a "Disciplined Firm" as defined in FINRA Rule 3170[13], missed the applicable ratio threshold by a couple of points over a very short period of time in violation of Rule 3170.

---

[13] *In a nutshell, FINRA Rule 3170 – the Taping Rule - requires a broker-dealer that hires stockbrokers associated with a "Disciplined Firm" for more than 90 days within the last 3 years to ensure that the ratio of the stockbrokers from Disciplined Firms vis a viz stockbrokers hired from non-Disciplined Firms on the broker-dealer's roster does not exceed 40% or 20% depending on the overall number of stockbrokers working for the firm. In the case of BlackBook, what happened was that BlackBook had hired a couple of brokers from John Carris Investments LLC, a Disciplined Firm; however, the vast majority brokers of the John Carris did not even conduct any business while at John Carris because John Carris was already under FINRA investigation at the time the brokers joined John Carris or had disclosure issues which delayed or made it difficult for them to timely register with the various state securities bureau to conduct any business. In effect, the majority of the brokers that BlackBook hired from John Carris were simply tainted or guilty by association with John Carris and not because they did anything wrong or even conducted any business while associated with John Carris. Naively believing that FINRA would take into consideration that the John Carris stockbrokers that sought employment at BlackBook did not even conduct any business at John Carris so as to have acquired the abusive sales practice which Rule 3170 was intended to address, BlackBook hired the John Carris brokers. It is important that the goal of FINRA Rule 3170 be properly situated in the context of its imposition on BlackBook. FINRA Rule 3170 assumes that a stockbroker associated with a Disciplined Firm for more than 90 days in the past 3 years must have acquired industry bad behavior or abusive sales practice and as such must be closely monitored to avoid his/her contaminating or spreading the bad*

The result was swift; FINRA immediately subjected BlackBook to the "Taping Rule" under Rule 3170, an extraordinarily burdensome rule for a small firm to comply with.

Upon information and belief, and in the hurry to impose the Taping Rule on BlackBook, FINRA Staff took the extraordinary step of including a stockbroker who did not even meet the threshold requirement for inclusion in the roster for the calculation of Taping Rule ratio.

---

behavior at his/her new place of employment. However, majority of the John Carris brokers hired by BlackBook could not have acquired any such bad behavior because they never even conducted a single business at John Carris. Nevertheless, conscious of Rule 3170, BlackBook diligently monitored the ratio of John Carris former brokers vis a viz the non-John Carris on its roster to make sure the ratio stayed within the limits prescribed by Rule 3170. However, in the fall of 2015, BlackBook compliance staff was distracted and hobbled with the time-consuming extraordinary and unwarranted submission of monthly FOCUS Reports and supporting trial balance and reconciliations and the endless back and forth of explanations of underlying figures with FINRA Staff and suddenly, there was an abrupt departure of some non-John Carris stockbrokers from BlackBook which suddenly upended the closely monitored ratio. BlackBook did not have the clairvoyance to have foreseen the sudden departures of the non-John Carris stockbrokers so as to have laid off the John Carris stockbrokers prior to the departures to stay within the applicable ratio. As a result, FINRA came down on BlackBook with a sledgehammer, as it were, and swiftly imposed the Taping Rule on BlackBook, a very difficult rule for a small firm to comply with. To reiterate, but for the biased and discriminatory imposition of extraordinary, unjustifiable and illegal monthly FOCUS Report and supporting trial balance and bank reconciliation submissions which hobbled BlackBook compliance staff, BlackBook would have contemporaneously or immediately laid off or fired the John Carris brokers on the same day that the non-John Carris brokers left the employment of BlackBook to simultaneously even out the ratio and save the BlackBook from the Taping Rule.

Upon information and belief, overwhelmed by the unwarranted financial reporting obligation and the consequent taping rule requirement, BlackBook was compelled to withdraw its broker-dealer registration and terminate its FINRA membership and was immediately punished with an "expulsion" for failing to pay $50,000.00 fine, a blatant falsehood, because the amount owed was only $7,599.85.

Upon information and belief, while FINRA would characteristically come down with a sledgehammer on BlackBook, a small member firm, FINRA overlooked the massive fraud on the market perpetrated by big and powerful investment banks who packaged, sliced and diced and securitized subprime mortgages, which caused a near collapse of the global economy, leading to the $700 billion rescue package of The Emergency Economic Stabilization Act of 2008 and an estimated $29 trillion in total costs to U.S. taxpayers. [14]

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

a) awarding to Plaintiff, Ogele as owner of BlackBook, actual damages in an amount to be determined at trial for the loss of BlackBook stemming from FINRA's biased and discriminatory enforcement of SEC Rule 17a-5;

b) awarding to Plaintiff, Ogele as owner of BlackBook, punitive damages in an amount to be determined at trial for the loss of BlackBook stemming from FINRA's biased and discriminatory enforcement of SEC Rule 17a-5;

c) awarding to Plaintiff, BlackBook attorneys' fees for prosecuting this matter against FINRA for biased and discriminatory enforcement of SEC Rule 17a-5;

d) awarding to Plaintiffs the costs and expenses of this action; and

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

### *As of the Fourth Cause of Action – Constructive Expulsion*

SEC Rule 17a-5(a)(2)(iii) requires broker-dealers who clear and carry customer accounts to file monthly FOCUS Reports.

---

[14] https://en.wikipedia.org/wiki/Emergency_Economic_Stabilization_Act_of_2008

Plaintiff, BlackBook never cleared nor carried customer accounts.

However, and contrary to the law, Plaintiff, BlackBook was subjected to the biased and discriminatory, unwarranted, unjustified and extraordinary monthly financial reporting obligations even though BlackBook never held nor cleared customer accounts and had no prior history of Net Capital Rule [17 CFR § 240.15c3-1] violation at the time FINRA imposed the unwarranted, unjustified and extraordinary monthly financial reporting obligation on BlackBook.

Upon information and belief, FINRA did not impose did not impose the requirement for monthly FOCUS Reporting on similarly situated member firms.

Plaintiff, Ogele only became aware that FINRA did not impose did not impose the requirement for monthly FOCUS Reporting on similarly situated members, a biased and discriminatory practice that ultimately led to the demise of BlackBook, in or about April 2019.[15]

The imposition of unwarranted, unjustified and extraordinary monthly financial reporting obligation on BlackBook which neither a cleared customer trades nor carried customer accounts was in violation of SEC Rule 17a-5(a)(2)iii) [not FINRA rule] and therefore contrary to the law.

Upon information and belief, FINRA knew that the unwarranted, unjustified and extraordinary monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable requests for explanations of the underlying entries from FINRA Staff, would have BlackBook, a small member firm with limited resources, hobbled with monthly financial reporting obligations to the neglect and detriment of other regulatory obligations required of a broker-dealer.

---

[15] *Consequently, in the course of this litigation, our discovery will necessarily investigate whether FINRA imposes disparate regulatory scheme on similarly situated member firms which is ultra vires, as a matter of law.*

16

Upon information and belief, FINRA knew that the unwarranted, unjustified and extraordinary monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable requests for explanations of the underlying entries from FINRA Staff, was biased and discriminatory, unfairly burdensome and acted as an *inbuilt headwind* against BlackBook, a small FINRA member firm with limited resources, making it impossible for BlackBook to survive.

Upon information and belief, the imposition of discriminatory unwarranted, unjustified and extraordinary monthly FOCUS Reporting and submission of the underlying supporting financial records with the inevitable requests for explanations of the underlying entries from FINRA Staff, constituted Constructive Expulsion of BlackBook from FINRA and/or a Nail on the Coffin of BlackBook because it had the predictable effect of having BlackBook so hobbled with monthly FOCUS filing and little time to react immediately with layoffs of John Carris brokers on the same day the non-John Carris brokers suddenly left the employment of BlackBook to simultaneously even out the ratio and save the BlackBook from the Taping Rule.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and against the Defendants for Constructive Expulsion as follows:

e) awarding to Plaintiff, Ogele as owner of BlackBook, actual damages in an amount to be determined at trial for the loss of BlackBook;

f) awarding to Plaintiff, Ogele as owner of BlackBook, punitive damages in an amount to be determined at trial for the loss of BlackBook;

g) awarding to Plaintiff, BlackBook attorneys' fees for prosecuting this matter;

h) awarding to Plaintiffs the costs and expenses of this action; and

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

### *As of the Fifth Cause of Action – Libel / Defamation*

Plaintiffs reiterate the allegations above as if repeated verbatim herein and allege as follows:

FINRA libeled BlackBook by falsely publishing that BlackBook was expelled for failing to pay $50,0000.00 in fines.

17

Plaintiff, BlackBook avers that there is vast difference between owing $50,000.00 and $7,599.85.

During on or about August and October 2019, Ogele sought financing on a Phase 1, $60,000,000 real estate development project in Myrtle Beach, SC[16] and for a $100,000,000 hotel and condominiums development in St Thomas, United States Virgin Islands.

The funding sources conducted a search of Ogele on the internet and withdrew from the transaction after the search disclosed that Ogele was associated with BlackBook expelled by FINRA for failure to pay $50,000.00 in fine.

The blatantly false and malicious publication has brought Ogele to public disrepute and opprobrium as potential financiers who google Ogele inevitably reads the false publication which associates Ogele with a $50,000.00 deadbeat and quickly withdraw from the financing.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

      a) awarding to Plaintiff, Ogele, actual damages in an amount to be determined at trial;

      b) awarding Plaintiff, Ogele, presumed damages in an amount to be determined at trial;

      c) awarding to Plaintiff, Ogele, punitive damages in an amount to be determined at trial;

      d) awarding to Plaintiff, BlackBook attorneys' fees;

      e) awarding to Plaintiffs the costs and expenses of this action;

      f) directing FINRA to expunge the false disclosure from FINRA/CRD;

      g) directing FINRA to post a public retraction of the false disclosure on FINRA/CRD or such other media forum as determined at trial; and

---

[16] *The total projected capital outlay for the 26 buildings, 520 Units, Summit Shores, Myrtle Beach, SC development is $134,641,970.*

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

### *As of the Sixth Cause of Action – Negligence for Failure to Supervise FINRA's Central Registration Depositary Personnel*

Plaintiffs reiterate the allegations above as if repeated verbatim herein and allege as follows:

FINRA's actions have consequences.

FINRA owes a duty of care to Plaintiffs because FINRA publications are widely read by the public and have real life's consequences.

FINRA/CRD is the repository of FINRA member information.

By failing to properly supervise the FINRA/CRD personnel to ensure the accuracy of the information entered on FINRA/CRD, FINRA violated the duty of care owed to Plaintiffs.

By failing to properly supervise the FINRA/CRD personnel, resulting in the expulsion and publication of the expulsion of a member that had already voluntarily withdrawn from FINRA membership, FINRA violated the duty of care to BlackBook.

By failing to properly supervise the FINRA/CRD personnel, resulting in the false publication that BlackBook was expelled for failing to pay $50,000.00 in fines when the actual amount owed was only $7,599.85, FINRA violated the duty of care to Plaintiffs as the publication has falsely cast both Ogele and BlackBook as $50,000.00 deadbeats.

As a result of FINRA's negligence and failure to supervise FINRA/CRD personnel, Ogele has been harmed as financing sources have shied away from doing business with Ogele.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against the Defendants as follows:

a) awarding to Plaintiffs nominal damages in an amount to be determined at trial;

b) awarding Plaintiff, Ogele as owner of BlackBook, compensatory damages in an amount to be determined at trial stemming from FINRA's negligence;

c) awarding to Plaintiff, Ogele as owner of BlackBook, punitive damages in an amount to be determined at trial for FINRA's negligent actions;

d) awarding to Plaintiff, BlackBook, attorneys' fees;

e) awarding to Plaintiffs the costs and expenses of this action;

f) directing FINRA to expunge the false disclosure from FINRA/CRD;

g) directing FINRA to post a public retraction of the false disclosure on FINRA/CRD or such other media forum as determined at trial; and

granting to Plaintiffs such other, further, and different relief as the Court deems just and proper.

Dated this _____ December 2019

_____

*Franklin Ogele, Esq.*
*New Jersey Bar #00252190*
*New York Bar # 2364974*
*One Gateway Center, 26th Fl*
*Newark, New Jersey 07102*
*Phone: 973 277 4239*
*Fax: 862 772 3985*
*As Pro Se Plaintiff*
*And as Counsel for Plaintiff, BlackBook Capital Inc.*